Approved: _____
          SARAH L. KUSHNER
          Assistant United States Attorney

Before:   THE HONORABLE SARAH L. CAVE
          United States Magistrate Judge
          Southern District of New York          **22 MAG 1546**

- - - - - - - - - - - - - - - - - - X
                                    :
                                    :   <u>**SEALED COMPLAINT**</u>
UNITED STATES OF AMERICA            :
                                    :   Violations of
       - v. -                       :   18 U.S.C. §§ 1028A,
                                    :   1349, and 2
                                    :
RUDY BURGOS-HERNANDEZ,              :
VICTOR FRIAS-GARCIA, and            :   COUNTY OF OFFENSE:
FRANKLIN BELLO JIMENEZ,             :   BRONX
                                    :
              Defendants.           :
                                    :
- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        MICHAEL J. KOZLOWSKI, being duly sworn, deposes and
says that he is a Postal Inspector with the U.S. Postal
Inspection Service ("USPIS"), and charges as follows:

<u>**COUNT ONE**</u>
(Bank Fraud Conspiracy)

        1.   From at least in or about 2018, up to and
including at least in or about 2019, in the Southern District of
New York and elsewhere, RUDY BURGOS-HERNANDEZ, VICTOR FRIAS-
GARCIA, and FRANKLIN BELLO JIMENEZ, the defendants, and others
known and unknown, willfully and knowingly, did combine,
conspire, confederate, and agree together and with each other to
commit bank fraud, in violation of Title 18, United States Code,
Section 1344.

        2.   It was a part and object of the conspiracy that
RUDY BURGOS-HERNANDEZ, VICTOR FRIAS-GARCIA, and FRANKLIN BELLO
JIMENEZ, the defendants, and others known and unknown, willfully
and knowingly, would and did execute and attempt to execute a
scheme and artifice to defraud a financial institution, the
deposits of which were then insured by the Federal Deposit
Insurance Corporation, and to obtain moneys, funds, credits,
assets, securities, and other property owned by, and under the

custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Aggravated Identity Theft)

3.     From at least in or about 2018, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, RUDY BURGOS-HERNANDEZ, VICTOR FRIAS-GARCIA, and FRANKLIN BELLO JIMENEZ, the defendants, willfully and knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, BURGOS-HERNANDEZ, FRIAS-GARCIA, and BELLO JIMENEZ used, and aided and abetted the use of, the identifying information of other people in connection with the conspiracy to commit bank fraud charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1) and (b), and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.     I am a Postal Inspector with USPIS and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement officers, as well as my examination of reports and other records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

5.     From at least in or about 2018, up to and including at least in or about 2019, RUDY BURGOS-HERNANDEZ, VICTOR FRIAS-GARCIA, and FRANKLIN BELLO JIMENEZ, the defendants, and others, conspired to fraudulently open approximately 340 credit card accounts at various stores of a home improvement

retailer ("Company-1"), issued by a federally insured bank ("Bank-1"), using the personal identifying information of other individuals, including minors and deceased individuals, and caused a loss to Company-1 and to Bank-1 of approximately $1,777,174.54 and $761,646.23, respectively, using credit cards issued for those accounts.

6.     The scheme worked as follows.  RUDY BURGOS-HERNANDEZ, VICTOR FRIAS-GARCIA, and FRANKLIN BELLO JIMENEZ, the defendants, would go shopping at one of Company-1's stores.  At the checkout counter, they would apply for a credit card under someone else's name.  They would then use that fraudulently obtained credit card to purchase merchandise at the store.

**The Fraud Scheme**

7.     Based on my review of records obtained from Company-1, I have learned, among other things, that from at least in or about December 2018, up to and including at least in or about November 2019, RUDY BURGOS-HERNANDEZ, VICTOR FRIAS-GARCIA, and FRANKLIN BELLO JIMENEZ, the defendants, opened approximately 340 fraudulent credit card accounts at Company-1's stores, including the following fraudulent credit cards, and that charges in various amounts were made using those cards, including the following charges:

a.     On or about December 27, 2018, an individual subsequently identified as BURGOS-HERNANDEZ entered a particular Company-1 store located in Smithtown, New York ("Store-1"). That day, someone applied for and received a Company-1 credit card account in the name of a non-existent company ("Fake Company-1"), using the personal identifying information of an individual victim ("Victim-1"), and an unrelated address in the Bronx, New York.  Company-1 issued a credit card ending in the digits 3978 ("Fraudulent Credit Card-1") in the name of Victim-1 and Fake Company-1.  Fraudulent Credit Card-1 had a line of credit of $8,000.  On or about December 27, 2018, at approximately 3:02 p.m., while BURGOS-HERNANDEZ was in Store-1, approximately $1,691.33 worth of merchandise was purchased from Store-1, using Fraudulent Credit Card-1.  In total, approximately $22,347 was fraudulently charged to Fraudulent Credit Card-1.

b.     On or about January 25, 2019, an individual subsequently identified as BURGOS-HERNANDEZ entered a particular Company-1 store located in Bellport, New York ("Store-2").  That day, someone applied for and received a Company-1 credit card account in the name of a non-existent company ("Fake Company-

2"), using the personal identifying information of an individual victim ("Victim-2"), and an unrelated address in the Bronx, New York.  Company-1 issued a credit card ending in the digits 3523 ("Fraudulent Credit Card-2") in the name of Victim-2 and Fake Company-2.  Fraudulent Credit Card-2 had a line of credit of $3,700.  On or about January 25, 2019, while BURGOS-HERNANDEZ was in Store-2, approximately $2,233.53 worth of merchandise was purchased from Store-2, using Fraudulent Credit Card-2.  In total, between on or about January 25, 2019, and on or about January 30, 2019, approximately $4,018.18 was charged to Fraudulent Credit Card-2.

        c.    On or about January 30, 2019, an individual subsequently identified as FRIAS-GARCIA entered Store-2.  That day, FRIAS-GARCIA applied for and received a Company-1 credit card in the name of a non-existent company ("Fake Company-3"), using the personal identifying information of an individual victim ("Victim-3"), and an unrelated address in the Bronx, New York.  Company-1 issued a credit card ending in the digits 5538 ("Fraudulent Credit Card-3") in the name of Victim-3 and Fake Company-3.  Fraudulent Credit Card-3 had a line of credit of $6,000.  On or about January 30, 2019, FRIAS-GARCIA, using Fraudulent Credit Card-3, purchased approximately $2,103.18 worth of merchandise from Store-2.

        d.    On or about February 6, 2019, two individuals subsequently identified as BURGOS-HERNANDEZ and FRIAS-GARCIA entered a particular Company-1 store located in Levittown, New York ("Store-3").  BURGOS-HERNANDEZ applied for and received a Company-1 credit card account in the name of a non-existent company ("Fake Company-4"), using the personal identifying information of an individual victim ("Victim-4"), and an unrelated address in the Bronx, New York.  Company-1 issued a credit card ending in the digits 7199 ("Fraudulent Credit Card-4") in the name of Victim-4 and Fake Company-4.  Fraudulent Credit Card-4 had a line of credit of $2,400.  On or about February 6, 2019, BURGOS-HERNANDEZ, using Fraudulent Credit Card-4, purchased approximately $1,986.09 worth of merchandise from Store-3.

        e.    On or about February 21, 2019, an individual subsequently identified as BURGOS-HERNANDEZ entered Store-3.  That day, BURGOS-HERNANDEZ applied for and received a Company-1 credit card account in the name of a non-existent company ("Fake Company-5"), using the personal identifying information of an individual victim ("Victim-5"), and an unrelated address in the Bronx, New York.  Company-1 issued a credit card ending in the digits 9295 ("Fraudulent Credit Card-5") in the name of Victim-5

and Fake Company-5. Fraudulent Credit Card-5 had a line of credit of $6,000. On or about February 21, 2019, BURGOS-HERNANDEZ, using Fraudulent Credit Card-5, purchased approximately $2,367.79 worth of merchandise from Store-3. In total, between on or about February 21, 2019, and on or about March 5, 2019, approximately $6,009.21 was charged to Fraudulent Credit Card-5.

   f. On or about March 5, 2019, an individual subsequently identified as BURGOS-HERNANDEZ entered a particular Company-1 store located in the Bronx, New York ("Store-4"). That day, BURGOS-HERNANDEZ used a Company-1 credit card ending in the digits 6879 ("Fraudulent Credit Card-6") and held in the name of an individual victim ("Victim-6") and a non-existent company ("Fake Company-6") to purchase approximately $1,206.48 worth of merchandise from Store-4. Fraudulent Credit Card-6 had a line of credit of $4,200.

   g. On or about March 7, 2019, an individual subsequently identified as BURGOS-HERNANDEZ entered Store-4. That day, BURGOS-HERNANDEZ used a Company-1 credit card ending in the digits 6424 ("Fraudulent Credit Card-7") and held in the name of an individual victim ("Victim-7") and a non-existent company ("Fake Company-7"), to purchase approximately $671.42 worth of merchandise from Store-4. Fraudulent Credit Card-7 had a line of credit of $9,800.00. In total, between on or about March 1, 2019, and on or about March 11, 2019, approximately $25,930.01 was charged to Fraudulent Credit Card-7.

   h. On or about March 7, 2019, two individuals subsequently identified as BURGOS-HERNANDEZ and BELLO-JIMENEZ, respectively, entered a particular Company-1 store located in Bayshore, New York ("Store-5"). That day, someone applied for and received a Company-1 credit card ending in the digits 1615 ("Fraudulent Credit Card-8") that was issued in the name of a non-existent company ("Fake Company-8"), using the personal identifying information of an individual victim ("Victim-8"). Fraudulent Credit Card-8 had a line of credit of $6,000. On or about March 7, 2019, BURGOS-HERNANDEZ and BELLO JIMENEZ, using Fraudulent Credit Card-8, purchased approximately $1,948.85 worth of merchandise from Store-5. In total, between on or about March 7, 2019, and on or about March 24, 2019, a total of approximately $16,747.20 was charged to Fraudulent Credit Card-8.

   i. On or about April 4, 2019, an individual subsequently identified as BURGOS-HERNANDEZ entered a particular Company-1 store located in the Bronx, New York ("Store-6").

That day, BURGOS-HERNANDEZ applied for and received a Company-1 credit card ending in the digits 3953 ("Fraudulent Credit Card-9") that was issued in the name of a non-existent company ("Fake Company-9"), using the personal identifying information of an individual victim ("Victim-9"), and an unrelated address in the Bronx, New York.  Fraudulent Credit Card-9 had a line of credit of $10,000.  On or about April 11, 2019, BURGOS-HERNANDEZ, using Fraudulent Credit Card-9, purchased approximately $2,908.57 worth of merchandise from Store-6.  In total, between on or about April 4, 2019, and on or about April 11,2019, approximately $10,203.45 was charged to Fraudulent Credit Card-9.

j.   On or about April 26, 2019, someone applied for and received a Company-1 credit card ending in the digits 2393 ("Fraudulent Credit Card-10"), issued in the name of a non-existent company ("Fake Company-10"), using the personal identifying information of an individual victim ("Victim-10"), and an unrelated address in Mamaroneck, New York.  Fraudulent Credit Card-10 had a line of credit of $6,000.  On or about May 10, 2019, BURGOS-HERNANDEZ and BELLO JIMENEZ, using Fraudulent Credit Card-10, purchased approximately $978.00 worth of merchandise at Store-1.  In total, between on or about April 26, 2019, and on or about May 11, 2019, a total of approximately $12,630.81 was charged to Fraudulent Credit Card-10.

k.   On or about September 5, 2019, an individual subsequently identified as BURGOS-HERNANDEZ entered a particular Company-1 store located in Farmingdale, New York ("Store-7"). That day, BURGOS-HERNANDEZ applied for and received a Company-1 credit card ending in the digits 8168 ("Fraudulent Credit Card-11"), issued in the name of a non-existent company ("Fake Company-11"), using the personal identifying information of an individual victim ("Victim-11").  Fraudulent Credit Card-11 had a line of credit of $6,000.  On or about September 5, 2019, BURGOS-HERNANDEZ, using Fraudulent Credit Card-11, purchased approximately $2,600.00 worth of merchandise from Store-7.  In total, between on or about September 5, 2019, and on or about September 6, 2019, a total of approximately $5,882.82 was charged to Fraudulent Credit Card-11.

l.   On or about September 5, 2019, an individual subsequently identified as BELLO JIMENEZ entered a particular Company-1 store located in Farmingdale, New York ("Store-8"). That day, BELLO JIMENEZ applied for and received a Company-1 credit card ending in the digits 5892 ("Fraudulent Credit Card-12"), issued in the name of a non-existent company ("Fake Company-12"), using the personal identifying information of an individual victim ("Victim-12"), and an unrelated address in the

Bronx, New York.  Fraudulent Credit Card-12 had a line of credit of $6,000.  On or about September 5, 2019, BELLO JIMINEZ, using Fraudulent Credit Card-12, purchased approximately $2,778.00 worth of merchandise from Store-8.  In total, on or about September 5, 2019, approximately $5,398.99 was charged to Fraudulent Credit Card-12.

       m.   On or about September 13, 2019, two individuals subsequently identified as BURGOS-HERNANDEZ and BELLO JIMENEZ entered a Company-1 store located in Port Chester, New York ("Store-9").  At the store, they purchased approximately $986.54 worth of merchandise using a Company-1 credit card ending in the digits 6265 ("Fraudulent Credit Card-13").  Fraudulent Credit Card-13 was issued in the name of an individual victim ("Victim-13") and a non-existent company ("Fake Company-13").

       n.   On or about September 20, 2019, an individual subsequently identified as BELLO JIMENEZ entered a particular Company-1 store located in West Nyack, New York ("Store-10").  At the store, BELLO JIMENEZ purchased approximately $1,093.50 worth of merchandise using a Company-1 credit card ending in the digits 6301 ("Fraudulent Credit Card-14").  Fraudulent Credit Card-14 was opened on or about September 5, 2019, and was issued in the name of an individual victim ("Victim-14") and a non-existent company ("Fake Company-14").  Fraudulent Credit Card-14 had a line of credit of $5,000.  Between on or about September 19, 2019, and September 20, 2019, a total of approximately $4,765.39 was charged to Fraudulent Credit Card-14.

       o.   On or about October 18, 2019, an individual subsequently identified as BURGOS-HERNANDEZ entered a particular Company-1 store located in Riverhead, New York ("Store-11").  At the store, BURGOS-HERNANDEZ applied for and received a Company-1 credit card ending in the digits 4589 ("Fraudulent Credit Card-15"), and issued in the name of an individual victim ("Victim-15") and a non-existent company ("Fake Company-15").  That same day, BURGOS-HERNDANEZ, using Fraudulent Credit Card-15, purchased approximately $2,597 worth of merchandise from Store-11.  Fraudulent Credit Card-15 had a line of credit of $6,000.  In total, approximately $6,460.22 was charged to Fraudulent Credit Card-15.

       p.   On or about October 18, 2019, an individual subsequently identified as BURGOS-HERNANDEZ entered a particular Company-1 store located in Coram, New York ("Store-12").  BURGOS-HERNANDEZ, using a Company-1 credit card ending in the

digits 5099 ("Fraudulent Credit Card-16") that was opened the
same day at another Company-1 location in the name of an
individual victim ("Victim-16") and a non-existent company
("Fake Company-16"), purchased approximately $1,049 in
merchandise from Store-12. Fraudulent Credit Card-16 had a line
of credit of $4,000. On or about October 18, 2019, a total of
approximately $4,763.79 was charged to Fraudulent Credit Card-16.

       q.   On or about October 29, 2019, an individual
subsequently identified as BURGOS-HERNANDEZ entered Store-5 and
applied for and received a Company-1 card ending in the digits
6714 ("Fraudulent Credit Card-17"), using the personal
identifying information of an individual victim ("Victim-17")
and a non-existent company ("Fake Company-17"). Company-1
issued Fraudulent Credit Card-17 in the name of Victim-17 and
Fake Company-17. That same day, BURGOS-HERNANDEZ, using
Fraudulent Credit Card 17, purchased approximately $2,697 worth
of merchandise from Store-5. Fraudulent Credit Card-17 had a
line of credit of $9,800. Between on or about October 29, 2019,
and October 30, 2019, a total of approximately $10,425.69 was
charged to Fraudulent Credit Card-17.

       r.   On or about November 7, 2019, an individual
subsequently identified as BURGOS-HERNANDEZ entered Store-2. At
the store, BURGOS-HERNANDEZ applied for and received a Company-1
credit card ending in the digits 6810 ("Fraudulent Credit Card-
18," and with Fraudulent Credit Cards-1 through -17, the
"Fraudulent Credit Cards"), using the personal identifying
information of an individual victim ("Victim-18") and a non-
existent company ("Fake Company-18"). That same day, BURGOS-
HERNANDEZ, using Fraudulent Credit Card-18, purchased
approximately $1,354 worth of merchandise from Store-2.
Fraudulent Credit Card-18 had a line of credit of $9,800. On or
about November 7, 2019, a total of approximately $9,620.21 was
charged to Fraudulent Credit Card-18.

      8.   Based on my training and experience, I know that
the close similarity of the modus operandi for the opening and
use of the above-described fraudulent credit cards makes it
highly likely that the fraudulent credit cards were opened and
used as part of a single scheme.

### The Defendants Stole The Victims' Identities

      9.   Based on my discussions with another law
enforcement officer ("Law Enforcement Officer-1") who contacted
certain of the above-mentioned individual victims, and reviewed
information about the victims' social security numbers and birth

dates obtained from a Social Security Administration database, I have learned, among other things, that certain victims did not open Company-1 credit cards in their names or give anyone else the permission or authority to do so. For example, based on my discussions with Law Enforcement Officer-1, who spoke with Victim-11, I have learned, among other things, that Victim-11 does not have and has never opened or applied for a Company-1 credit card, nor does Victim-11 own or have any affiliation with Fake Company-11.

10. Moreover, as discussed in greater detail below, based on my involvement in this investigation, including my comparison of video surveillance of the individuals who opened the Fraudulent Credit Cards, with photographs obtained from DMV or another law enforcement database of RUDY BURGOS-HERNANDEZ, VICTOR FRIAS-GARCIA, and FRANKLIN BELLO JIMENEZ, the defendants, I know that the individuals who opened the Fraudulent Credit Cards match the appearances of BURGOS-HERNANDEZ, FRIAS-GARCIA, and BELLO JIMENEZ.

## The Defendants Committed The Fraudulent Scheme

11. Based on my involvement in this investigation, I know that Company-1 obtained and provided law enforcement with video surveillance and still images from the Company-1 stores discussed above of the individuals ("Individual-1," "Individual-2," and "Individual-3") who opened the Fraudulent Credit Cards.

12. I have reviewed that video footage and those still images.

### FRANKLIN BELLO JIMENEZ

13. Based on my review of video footage and still images of the parking lot of Store-9, I know that on or about September 13, 2019—the day that Fraudulent Credit Card-13 was opened at Store-9—there was a distinct car in the parking lot that matched a car ("Car-1") identified in the parking lot of another Company-1 store ("Store-13") on a day when another fraudulent credit card was opened at Store-13. Based on my review of records obtained from a department of motor vehicles database, I have learned, among other things, that the license plate on Car-1 was registered to FRANKLIN BELLO JIMENEZ, the defendant.

14. I subsequently obtained from a department of motor vehicles database and reviewed a driver license photograph of FRANKLIN BELLO JIMENEZ, the defendant.

15.    In addition, I identified a Facebook account held in the name of FRANKLIN BELLO JIMENEZ, the defendant, and reviewed photographs published on that account.

16.    I have compared the video footage and still images from Company-1 stores of Individual-1 with the driver's license photograph and Facebook photographs of FRANKLIN BELLO JIMENEZ, the defendant, and believe that Individual-1 is BELLO JIMENEZ.

*RUDY BURGOS-HERNANDEZ*

17.    Based on my involvement in this investigation and my conversations with other law enforcement officers, I know that still images of Individual-2 captured on video footage obtained from certain of the Company-1 stores on the days of certain fraudulent transactions discussed above were sent to the Department of Homeland Security ("DHS"), which ran the still images through its database.  Those still images matched a photograph in DHS's database of RUDY BURGOS-HERNANDEZ, the defendant.

18.    I also identified and reviewed photographs published on social media accounts that were in RUDY BURGOS-HERNANDEZ, the defendant's, name.

19.    Based on my comparison of the video surveillance and still images of Individual-2 obtained from certain Company-1 stores, the DHS photograph, and social media photos, I believe that Individual-2 is RUDY BURGOS-HERNANDEZ, the defendant.

*VICTOR FRIAS-GARCIA*

20.    Based on my involvement in this investigation, I know that in or about June 2020, law enforcement officers provided to the New Jersey Motor Vehicle Commission ("NJ MVC") still images of video footage of Individual-3 from certain relevant Company-1 stores, and that NJ MVC ran those still images through its database.  NJ MVC facial recognition software returned a mugshot image for a possible match of VICTOR FRIAS-GARCIA, the defendant.  Thereafter, I obtained and reviewed additional photographs of FRIAS-GARCIA from law enforcement databases.

21.    In addition, I identified an Instagram account under the name "victor_fria" ("IG Account-1").  Based on my training and experience, I know that the presence of VICTOR

FRIAS-GARCIA's, the defendant's, first name and part of his last name in IG Account-1 tends to confirm that the account belongs to FRIAS-GARCIA.  And based on my review of publicly available information on IG Account-1, I have learned, among other things, that IG Account-1 follows an account ("IG Account-2") that I believe, based in part on photographs published on it, belongs to RUDY BURGOS-HERNANDEZ, the defendant.

22.  I have identified a Facebook account under the name "Victor Frias" ("Facebook Account-1").  Based on my training and experience, I know that the presence of VICTOR FRIAS-GARCIA's, the defendant's, first and last names in Facebook Account-1 tends to confirm that the account belongs to FRIAS-GARCIA.  Moreover, based on my review of publicly available information from Facebook Account-1, I have learned, among other things, that on Facebook Account-1, there is a photograph of, among others, two individuals whom I believe are FRIAS-GARCIA and RUDY BURGOS-HERNANDEZ, the defendant.

23.  I have also identified a Facebook account under the name "Victor M. Fria" ("Facebook Account-2").  Based on my training and experience, I know that the presence of VICTOR FRIAS-GARCIA's, the defendant's, first name and part of his last name in Facebook Account-2 tends to confirm that the account belongs to FRIAS-GARCIA.  Moreover, based on my review of publicly available information on Facebook Account-2, I have learned, among other things, that Facebook Account-2 is "friends" with Facebook accounts under the names "Franklin Bello," and "Rudy Burgos."  Based on my review of publicly available photographs on Facebook, compared with photographs of FRANKLIN BELLO JIMENEZ and RUDY BURGOS-HERNANDEZ, the defendants, I believe that those accounts are used by BELLO JIMENEZ and BURGOS-HERNANDEZ.

24.  Based on my comparison of video footage and still images of Individual-3 obtained from certain Company-1 stores, the mugshot in NJ MVC's Facial Recognition database, and photographs of VICTOR FRIAS-GARCIA, the defendant, obtained from other law enforcement databases and social media accounts, I believe that Individual-3 is FRIAS-GARCIA.

## FDIC Insurance

25.    Based on my review of bank records and my conversations with representatives of Bank-1, I have learned, among other things, that:

a.    Bank-1 issued and opened the accounts for the Fraudulent Credit Cards; and

b.    Bank-1 is insured by the Federal Deposit Insurance Corporation.

WHEREFORE, deponent respectfully requests that warrants issue for the arrests of RUDY BURGOS-HERNANDEZ, VICTOR FRIAS-GARCIA, and FRANKLIN BELLO JIMENEZ, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.


**/s Michael J. Kozlowski** (By Court with Authorization)
_____
Michael J. Kozlowski
Postal Inspector
U.S. Postal Inspection Service


Sworn to me through the transmission of this
Affidavit by reliable telephonic or electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1 this,

15th day of February, 2022

_____
THE HONORABLE SARAH L. CAVE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK